The People ex rel. Thomas C. Platt, Appellant, *v.* Edward Wemple, Comptroller, etc., Respondent.

The words "incorporated or organized under any law of this state," as used in the act of 1881, providing for the taxation of certain corporations, joint-stock companies and associations (Chap. 542, Laws of 1880, as amended by § 3, chap. 361, Laws of 1881; chap 501, Laws of 1885), are not to be taken in a technical or restricted sense and confined to associations brought into being according to the formality of a statute, but as including any combination of individuals upon terms which embody or adopt as rules or regulations of business the enabling provisions of the statutes, and, so far as possible for it, assume an independent personalty and claim privileges not possessed by individuals or copartnerships.

The U. S. E. Co., in the articles of association, or agreement under which it is organized, is described as a "joint-stock company," formed for the purpose of carrying on a forwarding, banking, exchange, and insurance business with a capital divided into shares represented by certificates or scrip, made assignable without restriction, and forfeitable by order of the directors for certain causes set forth. The board of directors is authorized to declare dividends from net earnings, and to elect from its members a president and other officers who are intrusted with the management of the whole business, no "shareholder" being permitted, without their authority, to use or sign the associate name; all deeds or other instruments to be taken in the name of the president; and all suits to be brought in his name. It is also provided that the death of any member or number of members less than a majority shall not work a dissolution of the company. In proceedings by *certiorari* to review the determination of the state comptroller, imposing a tax on the company under said act, *held*, that it must be deemed to be incorporated, that is, formed or united under the state statutes (Chap. 258, Laws of 1849; chap. 455, Laws of 1851; chap. 153, Laws of 1853; chap. 245, Laws of 1854; chap. 289, Laws of 1867), whether the artificial body so formed be termed a corporation, a joint-stock company or an association; also, that it was immaterial that the agreement constituting the company was prepared antecedent to the time that the act of 1854, (chap. 245) in relation to joint-stock companies, went into effect; that as the powers the agreement provided for and assumed to exercise were, by the act, ratified and made valid, thenceforth the company acted under and by virtue of the act ; and that the tax was properly imposed.

Also, *held*, that the tax sought to be enforced is neither in form nor substance obnoxious to any provision of the Federal Constitution.

(Argued October 7, 1889 ; decided November 26, 1889.)

APPEAL from an order of the General Term of the Supreme Court in the third judicial department, made May 27, 1889, which affirmed an order denying a motion to vacate an assessment made, by the state comptroller and confirming the assessment.

The nature of the proceeding and the facts are sufficiently stated in the opinion.

*W. W. MacFarland* for appellant.  If the words of section 3 of the act of 1881 (Laws of 1881, chap. 36) were ambiguous, the express mention of unincorporated associations in the sixth section is equivalent to a legislative declaration that they were not intended to be included in the third section. (*In re Miller*, 110 N. Y. 222; *People* v. *G. S. T. Co.*, 98 id. 67, 76, 77; *Bray* v. *Farwell*, 81 id. 608; *People* v. *H. Ins. Co.*, 92 id. 328.)  The relator is not an incorporated company, and, therefore, is not liable to the tax upon capital stock. (*M. I. Works* v. *Smith*, 4 Duer, 374; *Bell* v. *Streeter*, 1 N. Y. Trans. [N. S.] 6; *Witherhead* v. *Allen*, 3 Keyes, 564; *Nat. Bk.* v. *Vanderwerker*, 74 N. Y. 234; *Bray* v. *Farwell*, 81 id. 608; *C. T. Co.* v. *Smith*, 47 Hun, 494; *Whitman* v. *Hubbell*, 30 Fed. Rep. 81; *McKeon* v. *Kearney*, 57 How. Pr. 349; *B. & A. R. R. Co.* v. *Pearson*, 128 Mass. 445; *Bodwell* v. *Eastman*, 106 id. 525; *Lot* v. *Dinsmore*, 3 id. 45; *Frost* v. *Walkes*, 60 Me. 468; *Bacon* v. *Dinsmore*, 42 How. Pr. 377; *Tafft* v. *Ward*, 106 Mass. 518; *Chapman* v. *Barney*, 129 U. S. 677; 2 Bell's Com. 519, 520; 3 Kent's Com. 24; Parsons on Part. chap. 18; 1 Lindley on Part. 5; 1 Parsons on Con. [7th ed.] 162.)  The tax imposed by the third section of the act is unconstitutional. (*P. T. Co.* v. *W. U. T. Co.*, 96 U. S. 1; *Cook* v. *Pennsylvania*, 97 id. 566; *G. F. Co.* v. *Pennsylvania*, 114 id. 196; *T. Co.* v. *Texas*, 105 id. 460; *Pickard* v. *P. S. C. Co.*, 117 id. 34, 44; *Robbins* v. *S. C. T. Dist.*, 120 id. 498; *State Freight Tax Case*, 15 Wall. 232–238; *P. S. Co.* v. *Pennsylvania*, 122 U. S. 326; *Teloup* v. *Port of Mobile*, 127 id. 640.)

*Charles M. Da Costa* for appellant. To claim the tax it must be established that the party from whom it is claimed is " a corporation, joint-stock company or association, incorporated or organized under the law of this state," or of some other state or country, and that the tax so claimed is specifically imposed " as a tax upon its corporate franchise or business," that is, upon the franchise conferred or business carried on under and by virtue of an act of incorporation. (*P. Inst. v. Mass.*, 6 Wall. 631 ; Laws of 1881, chap. 361, § 3 ; *People v. Holme*, 92 N. Y. 328 ; *People v. E. T. Co.*, 96 id. 393 ; *People v. G. & S. T. Co.*; 98 id. 67, 76, 77 ; *In re Miller*, 110 id. 222.) The relator is not a corporation, nor exercising a corporate franchise or business. (Wilcock on Corp. 21 ; 1 Blackst. Com. 472 ; 2 Kent's Com. 276 ; 3 id. 25 ; *People v. Utica*, 15 Johns. 382 ; *Beatie v. Ins. Co.*, 2 id. 808 ; *Walsh v. Trustees*, 96 N. Y. 438 ; 3 Stephens' Com. 181 ; Burrill's Law Dict., tit. Joint-Stock Assn. ; *C. T. Co. v. Smith*, 47 Hun, 506.) The provisions of the Constitution of 1846 afford no sanction whatever for including the relator among corporations. (Const. 1846 ; 1 N. Y. R. S. [8th ed.] 76, art. 8, §§ 1–3 ; *Curtis v. Leavitt*, 15 N. Y. 74 ; *Parmly v. Bank*, 3 Edw. 395 ; *Leavitt v. Blatchford*, 17 N. Y. 521 ; *Gillett v. Campbell*, 1 Denio, 520 ; *In re Bank of Dansville*, 6 Hill, 370 ; *People ex rel. v. Coleman*, 5 N. Y. Supp. 394 ; 24 N. Y. S. R. 970.) The conferring upon voluntary associations of one or more of the powers which, at common law, are included in a grant of incorporation, does not incorporate them or constitute them, in any proper meaning of the term, corporations. (*Warner v. Beers*, 23 Wend. 103, 121, 140, 180 ; *Bacon v. Dinsmore*, 42 How. Pr. 368 ; *New York v. Smith*, 4 Duer, 874 ; *Suprs. v. People*, 7 Hill, 57 ; *Witherhead v. Allen*, 3 Keyes, 562, 564 ; *Woods v. De Figaniere*, 16 Abb. Pr. 1 ; *Sander v. Edling*, 13 Daly, 1 ; *McKeon v. Kearney*, 57 How. Pr. 349 ; *Betts v. Betts*, Id. 355 ; Code Civ. Pro. § 1919 ; *C. T. Co. v. Smith*, 47 Hun, 506 ; *Whitman v. Hubbell*, 30 Fed. Rep. 81 ; *Chapman v. Barney*, 129 U. S. 677, 682 ; *Taft v. Ward*, 106 Mass. 518 ; *Boston*

v. *Pearson*, 128 id. 445 ; *I. R. Co.* v. *Wyman*, 6 Ry. Corp. & L. J. 94.) The relators are not "organized under" any law of this state. (*Mann* v. *Butler*, 2 Barb. Ch. 362 ; *Smith* v. *Swormstedt*, 16 How. [U. S.] 288, 302 ; *Van Vechten* v. *Terry*, 2 Johns. Ch. 197 ; *Niven* v. *Spickerman*, 12 Johns. 401 ; *Chamberlain of London's Case*, 3 Coke, 62 b ; *Nat. Bk.* v. *Vanderwerker*, 74 N. Y. 234 ; *Gordon* v. *Cornes*, 47 id. 612.) Official usage is cogent evidence of the proper construction of a statute. (*Easton* v. *Pickersgill*, 55 N. Y. 310 ; *Power* v. *Village of Athens*, 26. Hun, 282 ; *Merium* v. *Harsen*, 2 Barb. Ch. 232 ; *Bk. of Utica* v. *Mersereau*, 3 id. 528, 577 ; *Fort* v. *Burch*, 6 Barb. 60, 73.) The comptroller has no authority to settle the amount of taxes for the years of 1880 to 1884, inclusive, and issue warrant therefor, but the remedy to test the question of the relator's liability is a suit for the purpose. (Chap. 361, § 3, Laws of 1881 ; *People* v. *E. Co.*, 96 N. Y. 397 ; *People* v. *H. S. M. Co.*, 105 id. 85, 87 ; 47 Hun, 587 ; 3 N. Y. S. R. 729 ; *Prince* v. *U. S.*, 2 Gall. 208 ; *Young* v. *Hughes*, 28 L. J., Ex. 164 ; *Vansittart* v. *Taylor*, 24 L. J., Q. B. 199 ; *Dash* v. *Van Kleek*, 7 Johns. 500 ; *Society* v. *Wheeler*, 2 Gall. 139 ; *Calder* v. *Bull*, 3 Dallas, 390.) The unconstitutionality of the statute if construed as applicable to associations of seven or more, whether it be applied only to those who have actually sued, or been sued, and held or conveyed property in an officer's name, thus exempting others equally within the acts of 1849, etc., or whether it be extended to all associations of seven or more, thus taxing all groups of seven engaged in business, and exempting all groups of six and less, is equally clear. (*Corfield* v. *Coryell*, 4 Wash. 380 ; *Slaughter-House Cases*, 16 Wall. 118 ; *County of San Mateo* v. *S. P. R. R. Co.*, 8 Am. and Eng. R. R. Cases, 11 ; *People* v. *Commissioners*, 76 N. Y. 71 ; *Exchange Bank* v. *Hines*, 3 Ohio St. 10 ; *People* v. *E. T. Co.*, 96 N. Y. 395.) The court may take judicial notice that the express business is largely carried on by incorporated large joint-stock companies. (*Isaacson* v. *N. Y. C. R. R. Co.*, 94 N. Y. 278 ; 25 Hun, 350 ; *Lane* v. *N. Y., L. E. & W. R. R. Co.*, 23

Week. Dig. 267 ; *E., C. & B. Co.* v. *Avery,* 83 N. Y. 31 ; 38 Am. Rep. 389 ; 18 Hun, 44 ; *Holmes* v. *Harrington,* 3 West. Rep. 296 ; *Slocovich* v. *Orient,* 108 N. Y. 63 ; *York* v. *Nat. Bk.,* 69 id. 387 ; *Steers* v. *Liverpool,* 57 id. 5 ; *Brown* v. *Piper,* 91 U. S. 42 ; *Howard* v. *Moot,* 64 N. Y. 271 ; Laws of 1885, chap. 523 ; *Nat. Bk.* v. *Kimball,* 103 U. S. 735 ; *People* v. *Weaver,* 100 id. 539 ; *Pelton* v. *Nat. Bk.,* 101 id. 143 ; *Cummings* v. *Nat. Bk.,* Id. 153.) The statute, even if applicable to such associations, is void so far as it assumes to authorize a tax upon the business of inter-state transportation, as in violation of the Constitution of the United States, article 1, section 8. (*Leloup* v. *Port of Mobile,* 127 U. S. 640 ; *U. S. E. Co.* v. *Hemingway,* 39 Fed. Rep. 60 ; *P. Co.* v. *Pennsylvania,* 122 U. S. 336–338 ; *Gloucester* v. *Pennsylvania,* 114 id. 196 ; *California* v. *P. Co.,* 127 id. 45 ; *Santa Clara* v. *S. P. Co.,* 118 id. 416.)

*Charles F. Tabor,* attorney-general, for respondent. Chapter 542 of the Laws of 1880 was one of a series of statutes all aimed at the same end, the obtaining revenue from a new source ; the taxation of such business enterprises as by reason of aggregate character enjoy the privileges of bodies corporate and the advantages of perpetual succession ; a taxation, not of their property, but of their privileges and business, based upon the dividend-earning power of their capital stock. (*People* v. *S. V. H. G. Co.,* 92 N. Y. 386 ; *People* v. *H. Ins. Co.,* Id. 328, 340.) The United States Express Company is subject to the taxation prescribed by section 3 of the act of 1880. It is a joint-stock company, and is organized under the laws of the state of New York, and derives its principal powers and privileges from such laws. (3 Anderson's Hist. Com. 81 ; 6 Ency. Brit., article, Company ; Taylor on Joint-Stock Companies, Statutes ; *Queen* v. *Whitmarsh,* 28 L. J. 185 ; *Duvergier* v. *Fellows,* 5 Bing. 248 ; *Blundell* v. *Windsor,* 8 Sim. 601 ; *Kahn* v. *Smelting Co.,* 102 U. S. 641, 645 ; *Bissell* v. *Foss,* 114 id. 252, 260 ; 3 T. R. 722.) The general intent of the legislation of 1880–1881 being clear, the statutes should be

broadly construed to assist and effectuate that intent. (*Ayers v. Lawrence*, 59 N. Y. 192; *Smith* v. *People*, 47 id. 330; 1 Waterman, 39; Lindley on Partnership [2d Am. ed.] 757; Cook on Stock, § 505.) Such company having, by its own acts and uniform policy, placed itself upon and profited by the very statutes which it now seeks to ignore, and having attained its present power and wealth by taking advantage of such statutes, should not now be heard to say that such statutes did not give it its present powers and advantages. (Laws of 1854, chap. 245; *Atkins* v. *Saxton*, 77 N. Y. 195, 199; *Hawley* v. *James*, 5 Paige, 451; Bigelow on Estop. 582; *Van Hook* v. *Whitlock*, 26 Wend. 43; *People* v. *Murray*, 5 Hill, 468; *Smith* v. *Sheeley*, 12 Wall. 358.) Within the scope of the legislation of 1880–1881, the taxation of corporate and aggregate privileges and franchises, the United States Express Company is to be considered as a corporation; and those privileges being the results of the legislation of the state, the company is to be considered as a corporation organized and incorporated under the laws of the state. (*Dartmouth College* v. *Woodward*, 4 Wheat. 636; 1 Black. Com. 474, 475; 1 R. S. 599; *Thomas* v. *Dakin*, 22 Wend. 9, 70, 94; Grant on Corp. 5; *Conservators* v. *Ash*, 10 B. & C. 349; *Denton* v. *Jackson*, 2 Johns. Ch. 320–324; *L. Ins. Co.* v. *Massachusetts*, 10 Wall. 566; 1 Waterman, § 92; *Westcott* v. *Fargo*, 61 N. Y. 542; *Waterbury* v. *M. E. Co.*, 50 Barb. 157; *Warner* v. *Beers*, 23 Wend. 103; *Bank of Watertown* v. *Assessors*, 25 id. 686; *Willoughby* v. *Comstock*, 3 Hill, 389; *People* v. *Niagara*, 4 id. 20; 7 id. 504; *Boisgerard* v. *Banking Co.*, 2 Sandf. Ch. 23; *Gifford* v. *Livingston*, 2 Denio, 380; *Leavitt* v. *Blatchford*, 17 N. Y. 521, 529; *Fargo* v. *McVickers*, 55 Barb. 440; *Fargo* v. *L., N. A. & C. R. Co.*, 6 Fed. Rep. 787; 2 Kyd on Corp. 475; Morawetz on Corp. [2d ed.] §§ 1, 227, 852; Taylor on Corp. § 50.) The power of the state to tax the United States Express Company does not rest upon the reserved right to regulate corporations, but upon the right of sovereignty. (Cooley on Tax. 7; *People* v. *Mayor, etc.*, 4 N. Y. 419; *Stuart* v. *Palmer*, 74 id. 183; *People* v. *E. T.*

*Co.*, 96 id. 387; *Portland Bk.* v. *Apthorp*, 12 Mass. 252; *In re McPherson*, 104 N. Y. 306.) The legislation of 1880, with its amendments, is constitutional with reference to the state Constitution. (*People* v. *H. I. Co.*, 92 N. Y. 328.) The legislation does not offend the Federal Constitution. (U. S. Const. art. 1, § 8; *People* v. *E. T. Co.*, 96 N. Y. 387; *Society* v. *Coite*, 6 Wall. 594; *P. Inst.* v. *Massachusetts*, Id. 633; *Hamilton Co.* v. *Massachusetts*, Id. 633; *Home Ins. Co.* v. *New York*, 119 U. S. 129; *Delaware Railroad Tax Cases*, 18 Wall. 206; *McCulloch* v. *Maryland*, 4 Wheat. 429; *Brown* v. *Maryland*, 12 id. 448; *Weston* v. *Charleston*, 2 Pet. 467; *Brown* v. *Houston*, 114 U. S. 622; *Mobile* v. *Kimball*, 102 id. 691; *Munn* v. *Illinois*, 94 id. 113; *Packet Co.* v. *Catletts-burg*, 105 id. 559; *Corson* v. *Maryland*, 120 id. 502; *Robbins* v. *Shelby Co. Taxing Dist.*, Id. 489; *Walling* v. *Michigan*, 116 id. 446; *Webber* v. *Virginia*, 103 id. 344; *Guy* v. *Balti-more*, 100 id. 434; *Welton* v. *Missouri*, 91 id. 275; *Cook* v. *Pennsylvania*, 97 id. 566; *Crandall* v. *Nevada*, 6 Wall. 35; *Henderson* v. *Mayor, etc.*, 92 U. S. 259; *Railway Co.* v. *Husen*, 95 id. 465; *Moran* v. *New Orleans*, 112 id. 69; *Pickard* v. *Pullman Co.*, 117 id. 34; *Tennessee* v. *Pullman Co.*, Id. 51; *G. F. Co.* v. *Pennsylvania*, 114 id. 196; *W. F. Co.* v. *East St. Louis*, 107 id. 365; *Trans. Co.* v. *Wheeling*, 99 id. 273; *Railway Tax Case*, 15 Wall. 284; *Telegraph Co.* v. *Texas*, 105 U. S. 460; *W. U. T. Co.* v. *Pendleton*, 122 id. 347; *Ratterman* v. *W. U. T. Co.*, 127 id. 411; *W. U. T. Co.* v. *Massachusetts*, 530; *Fargo* v. *Michigan*, 121 U. S. 230.)

Danforth, J. This case arises upon an application made by the relator, as president of the United States Express Company, for a *certiorari* requiring the comptroller of the state to return to the Supreme Court his proceedings relating to the imposition of a tax on the franchise or business of that company, to the end that such proceedings might be set aside, and in the meantime the collection of the tax be stayed. So far as is material to the question raised upon this appeal, the return of the comptroller showed that, prior to the 9th of

April, 1888, that officer called upon the express company to
report as to the amount of its capital stock employed within
this State, for the purpose of enabling him to adjust the taxes
and penalty due from it to the state under the provisions of
the act (Chap. 542 of the Laws of 1880), entitled "An act to
provide for raising taxes for the use of the state upon certain
corporations, joint-stock companies and associations," as
amended by subsequent acts (Chap. 361, Laws of 1881 ; chap.
501, Laws of 1885); that the company refused to comply
with his demand, and he, from such data as he could procure,
did assess and fix the taxes and penalties recited in the relator's
application.   It was thereupon stipulated by the relator and
the comptroller that the only question to be argued by either
party should be whether the relator was liable for the tax
provided for by the third section of the act of 1880 (*supra*),
and the acts amendatory thereof, and upon hearing of the
matter before the General Term of the Supreme Court in the
third department the application of the relator to vacate the
assessment was denied and the proceedings of the comptroller
were ratified and confirmed.   From the order then made this
appeal is taken by the relator.   The discussion is necessarily
limited to the point presented by the stipulation already
referred to.

The express company was composed of individuals who
signed an agreement purporting to have been made April 22,
1854, but which, by its terms, was to take effect on the 1st of
May, 1854, and continue in force for ten years thereafter.
On November 24, 1859, the articles were amended by the
associates so as to continue in force for twenty years from
the 1st of May, 1864, and on January 23, 1884, the directors,
under power conferred upon them by the associates, passed a
resolution continuing the existence of the company for twenty
years from May 1, 1884.   The association was formed for the
purpose of carrying on a forwarding agency, banking, exchange
and insurance business between such cities and towns of the
United States, and those of other countries, as the directors,
or their successors, might specify.

It is described in the articles as a "joint-stock company," its capital declared to be $500,000, divided into shares of $100 each, subject to increase or decrease, as the board of directors might think proper, but represented by certificates or scrip, signed by the president and secretary of the company, and countersigned by the treasurer. These shares are made assignable, without restriction, from one person to another, in the usual form, in person or by attorney, and may be forfeited by order of the directors for causes set forth in the agreement. The property and business of the company is to be managed by a board of five directors, who, from their own number, might elect a president, vice-president and secretary, and, except by their permission, "no shareholder in" the company can use or sign its associate name; in short, into their hands the management of the whole business of the company is intrusted. The directors are also empowered to declare dividends from the net earnings of the company as they may from time to time deem expedient. Deeds and other instruments of conveyance, or as security, are to run to the president; and all suits at law or in equity in favor of the company are to be brought in his name. It is also provided that the death of no member, or of any number of members less than a majority of the interest of the whole, shall operate as a dissolution of the company, but its business shall continue as if no death had occurred.

It seems obvious, from these articles, that the arrangement consummated by them has little in common with a private partnership, for they provide for a permanent investment of capital, the right of succession, the transfer of property by an assignment of the certificate of ownership, and the prosecution of suits in the name of one person. The company has, therefore, the characteristics of a corporation, and, so far as it can, it assumes to itself an independent personalty, and asserts powers and claims privileges not possessed by individuals or partnerships. It is precisely such an association as, when formed without authority from parliament, was declared in England to be illegal and void, and to be "deemed a public

nuisance" (6 George 1, chap. 18, § 18), the statute in this respect following, it was said, the common law and enforcing its rules by the imposition of penalties. (*Buck* v. *Buck*, 1 Camp. 547; *Rex* v. *Stratton*, Id. 549n ; *Josephs* v. *Pebrer*, 3 Barn. & C. 639.) It was held in *Duvergier* v. *Fellows* (5 Bing. 268), that there can be no transferable shares of any stock except the stock of corporations of joint-stock companies created by acts of parliament. (Affirmed in 10 Barn. & C. 826 ; 1 Clark & F. 39), and to the same effect is the decision in *Blundell* v. *Winsor* (8 Sim. 601). It is not necessary, however, to assert in what cases such a combination of individuals would now be deemed illegal at common law, for the statutes of the state render the arrangement possible, and in our opinion the association in question is within their purview. By the act of 1849 (Chap. 258, § 1) a joint-stock company or association was authorized "to sue and be sued in the name of the president and treasurer," with like effect as if the names of the associates were stated in the proceedings. It was extended in 1851. (Sess. Laws of 1851, chap. 455 ; Laws of 1853, chap. 153). On March 31, 1854, a bill was introduced into the legislature (See Senate Journal of that date) and passed April 15, 1854 (Laws of 1854, chap. 245), entitled " An act to amend, and in addition to the several acts relative to joint-stock associations," the first section of which declared that :

" Whenever, in pursuance of its articles of association the property of any joint-stock association is represented by shares of stock, it may be lawful for said association to provide by their articles of association that the death of any stockholder or the assignment of his stock shall not work a dissolution of the association, but it shall continue as before, nor shall such company be dissolved except by judgment of a court for fraud in its management, or other good cause to such court shown, or in pursuance of its articles of association ; " and by section two, that : " Said association may also, by said articles of association, provide that the share

holders may devolve upon any three or more of the partners the sole management of their business."

A further act was passed in 1867 (Chap. 289), authorizing "joint-stock companies and associations to purchase, hold and convey real estate," and declaring that all conveyances thereof should be made to the president of the company, who might hold and convey the same, free from any claim thereon, against any of the shareholders or any person claiming under them.

In view of the capacities and attributes with which, as we have seen, the United States Express Company is endowed, and in view, also, of the statutes which legalize its assumed capacities and make valid and effective its asserted right of succession, its distinctive name and the alienability of its shares, we find nothing to warrant the contention of the appellant that it is a mere partnership, existing only under its articles of agreement and association. It is true those articles contain no reference to any statute of the state, as one under or by which the company was organized, yet, by the very constitution of the body itself and the privileges and powers which it can only exercise by virtue of those statutes, it must be taken to belong to one of those classes of artificial beings described in the act of 1880 (*supra*) as " a corporation, joint-stock company or association." The several persons composing it are made into a collective body and are given capacity in its name, and not their own, to take, grant, sue and be sued. Thus they are united, or organized, or incorporated. The death of a member causes no interruption, and the power of continued existence of this one body, and its organized or corporate action is derived from no inherent power of one or all of its members, but from the law, which sanctions the union. It is doing business within this state, and because it was also formed under the laws of the state it is within the act. Nor does it seem to us that this construction is at all at variance with the literal and precise language of the act. It declares (§ 3 of the act of 1880, as amended in 1881, chap. 36), " Every corporation, joint-stock company or association whatever, now or hereafter incorporated or organized under

any law of this state, or now or hereafter incorporated or organized by or under the laws of any other state or country, and doing business in this state (with certain exceptions not now material) shall be subject to, and pay a tax, as a tax, upon it corporate franchise or business into the treasury of this state annually, to be computed," according to certain specified circumstances, upon the capital stock or its valuation, made in accordance with the provisions of the first section of the act.

The first section thus referred to makes it "the duty of the president or treasurer of every association, corporation or joint stock company, liable to be taxed on its corporate franchise or business as provided in section three, to make a report to the comptroller," of its capital and dividends, and, if no dividends, then of circumstances which prevent an appraisal. The phraseology of both sections, the first, "every association, corporation, or joint-stock company," and the third, the same words differently arranged, embrace the "United States Express Company," and its relation to the class is not changed by the subsequent limitation implied by the words "incorporated under any law of this state." The word "incorporated," as here used, is not to be taken in a technical or restricted meaning and confined to an association brought into being according to the formula of a statute, but as including any combination of individuals upon terms which embody or adopt as rules or regulations of business the enabling provisionso f the statutes.

In the case before us the agreement, which brought many persons into one artificial body, was so framed as to accomplish that end, and in proposing to conduct its affairs by the power given to it in the mode prescribed by the legislature, they must be deemed, for the purposes of the act in question, to be incorporated, that is, formed or united under the law of the state whether the artificial body be termed a corporation, a joint-stock company, or association.

Nor is the principal question altogether new. In *Waterbury* v. *Merchants' Union Express Company* (50 Barb. 158) the nature and legal character of the defendant, a joint-stock association, created in like manner with the one before us, was

held to have all the attributes of a corporation, and all its incidents except a common seal.   The statutes from 1849 to 1867 (*supra*) were examined and held to confer the qualities which distinguish a corporation from a partnership, and to establish the relations of a member of the association as those of a stockholder in a corporation, and not those of an individual in a partnership, and that, in controversies affecting them, the analogies afforded by laws and jurisprudence in the case of corporations should be followed, and not those derived from a simple partnership.   In *Westcott* v. *Fargo*, president of the same company (6 Lans. 319), a like discussion was had upon circumstances calling for a decision as to the nature and character of the association.   A shareholder sued the company for the loss of freight intrusted to it.   It was set up as a defense that the plaintiff, as such shareholder, was one of the owners of interest in the express company; but the court held otherwise — that it was no valid objection that the plaintiff was a member of the company — saying : " The action is against the corporation," and, so, the plaintiff prevailed.   Upon appeal the case came to this court (61 N. Y. 542), and again the issue was distinctly presented.   The appellant contended that the plaintiffs could not maintain an action upon a contract between themselves and the association of which they were members ; that their remedy was in equity for an accounting as in partnership cases ; while, for the respondent, it was argued that " joint-stock companies, organized under the statutes of the state, are corporations, not partnerships."   This court also examined the statutes relating to joint-stock companies (*supra*), and came to the conclusion that they conferred powers and privileges of corporations not possessed by individuals or partnerships.

We do not overlook the contention of the learned counsel for the appellant that the articles of agreement and association of the express company already contained the provisions embraced in the act of 1854 (*supra*), and were, therefore, part of the fundamental law of the company.   No doubt parties are, in general, deemed to contract with reference to the state

of the law as it exists at the time of making the contract, but certainly there is nothing to prevent them from doing so with reference to a state of the law which did not then exist, and more especially is this so if it appears that, by the terms of the agreement, that changed condition of the law might reasonably be expected. The act of 1854 was proposed to the legislature as early as March. It was passed and became a law on the fifteenth of April, and, although by force of the statute (1 R. S. tit. 4, pt. 1, chap. 7, p. 157, § 12), it did not take effect until twenty days thereafter, it was apparently in contemplation of the parties when, on the twenty-second of April, and, therefore, after its passage, they prepared an agreement embodying the terms and language of the statute. But, however that may be, the period of its new or extended existence began in 1864 when the law was in full force. The agreement which effected it might well be deemed equivalent to a new and original organization. I do not, however, regard this fact as essential. It is not an answer to the operation of the statute that the agreement constituting the joint-stock association was prepared antecedent to the time when it took effect. It is enough that the powers which it provided for and assumed to exercise were thereby ratified and made valid. Thenceforth it acted under and by virtue of the statute.

*Second.* We are also of opinion that the tax sought to be enforced is neither in form or substance obnoxious to any provision of the Federal Constitution. It interferes in no respect with commerce with foreign nations, or among the several states. It is confined to capital employed in this state by an entity existing under its laws, and the manner in which its value shall be assessed, and the rate of taxation are matters of legislative discretion. In no aspect does it profess " to regulate commerce," nor in any proper sense has the legislation in question that effect.

We, therefore, agree with the Supreme Court and think its order should be affirmed.

All concur ; ANDREWS, J., in result.

Order affirmed.