(Franklin County Court of Common Pleas.)

STATE OF OHIO v. THE ADAMS EXPRESS COMPANY; SAME v. THE AMERICAN EXPRESS CO.; SAME v. THE UNITED STATES EXPRESS CO.; SAME v. THE NATIONAL EXPRESS CO.

---

1. The statute, called the Hard law (91 Ohio Laws, 220) which imposes a tax upon "any person or persons, joint stock association or corporation" for doing express business in this state, is not unconstitutional, merely because the tax is discriminating.
2. Nor is the statute retroactive.

3. The defendants are not entitled to a deduction for amounts paid by them to railroads for transportation of their freight, which transportation did not begin and end in this state.

4. Imputed errors of the State board of appraisers, committed in assessing the tax, can not be rectified by courts, until the remedies provided by the statute have been first exhausted.

5. The defendant's possessing, all of the properties, rights, attributes, privileges and immunities which usually belong to corporations they may be treated by the courts of this state as corporations, notwithstanding their designation as joint stock associations by the statute of the state in which they were organized.

(Decided May, 1895.)

PUGH, J.

The first three of these cases are against non-resident corporations; the last case against a domestic corporation. The birth-place of the first three is New York state.

On behalf of the first three it was contended on the trial, which was without the aid of a jury, as it was on the motion that was overruled, that they are not corporations, but partnerships or joint stock associations, a species of partnership.

The reason for renewing this question was, as Mr. Maxwell said, that the depositions of Messrs. Seward, Platt and Ledyard had been taken, in the former of which fuller information touching the character and history of these defendants was disclosed than was brought to the attention of the court on the hearing of the motion.

The question is one of mixed fact and law.

The fuller information has not changed either the fact or the law.

It is true that they are not pure corporations; but it is equally true that they are not pure partnerships.

Unlike partnerships, but like corporations, their business is managed by officers.

Unlike partnerships, but like corporations, they have, in one sense, perpetual succession; their capital in divided into shares; the transfer of shares by one member does not operate to dissolve them; they can sue and be sued in a collective name; they can purchase and hold property in a collective name.

The fuller information on this trial has not modified, or affected, in any sense, the resolution of the law, by the highest court of the nation, that a foreign joint stock association, endowed with the ordinary corporate attributes, and possessing the general incidents of corporations, may be deemed a corporation for the purpose of taxation, notwithstanding the law under which it was organized declares that it is not a corporation.

Nor has it shaken the decision of the New York Court of Appeals, in a case in which one of these companies was a party, which declared that "it was not a mere partnership." (People ex rel. Platt v. Wemple, 117 N. Y. 136.)

The main reliance of the defendants on the law is the decision in People v. Coleman, 133 N. Y.; and Mr. Seward, whose deposition is really only an argument, as well as Mr. Maxwell, claimed that case distinguishes Platt v. Wemple, supra.

Yet the following passages in the opinion copied from the Coleman case demonstrates how destitute of merit that claim is. I quote:

"The case of People ex rel. Platt v. Wemple (117 N. Y. 136) shows very forcibly how almost the full measure of corporate attributes has, by legislative enactment, been bestowed upon joint stock associations, until the difference, *if there be one*, is obscure, elusive and difficult to see and describe."—

Those who have those faculties that enable them to

"* * * Distinguish, and divide,
A hair, 'twixt south and south-west side,"

can draw the line between them.

Where forced and refined distinctions are religiously preserved; where justice is entangled "in a net of technical jargon"; where form overshadows substance, there would be some weight attached to such contentions.

Mr. Seward makes the humiliating confession that when the Adams Express Co. has been sued in the state courts, as a corporation organized under the laws of New York, "it has not taken issue upon that allegation, but on the faith of its existence in the declaration has removed the cases into the Federal court."

Assuming that this particular defense is sincere, bona fide, this confession means that the company, in those cases, practiced frauds on the state courts. Believing in using plain vernacular, there is no other language appropriate to describe its conduct."

The case of Sandford v. Gregg, 65 Fed. Rep. 151, was also relied upon.

The internal evidence of the case itself shows that it was not well considered. Not half of the cases were noticed; the question was treated with an application of ipse dixit; the decision of the U. S. Supreme Court in the Liverpool case was considered, without reason, as distinguishable. The right of distinguishing cases may be abused. Distinguishing cases is often an indirect and unfair mode of overruling former decisions.

Notwithstanding it was the product of a U.S. Circuit Court of Appeals, it is entitled to no consideration as a guide.

It is claimed that the tax for the recovery of which these suits are brought is discriminating, and, therefore, the statute which authorizes it is unconstitutional.

The minor premise of this claim is that defendants are joint stock associations. It is conceded that the tax is not discriminating if they are corporations.

The purpose of the statute is to levy the excise tax on all persons, corporations and joint stock associations, engaged in the express business. It is so expressed in the first section of the statute.

It is not a tax upon property; nor is it a regulation of interstate commerce.

The unquestioned power of sovereignty may be exercised by the state imposing a tax upon persons, corporations, joint stock associations and partnerships for the privilege of doing business within its territory.

In one sense it is discrimination, but it is not unconstitutional discrimination, and the hinge upon which the right of discrimination turns is the special privilege conferred upon corporations, or citizens, in the form of a franchise. The peculiar privilege bestowed upon and enjoyed by them takes them outside of the constitutional guaranty. All classes of persons, whether natural or artificial, may be so taxed. They "occupy an extra-political status"; they do not stand upon the plain of ordinary citizenship.

It was said that their business was only ordinary and legitimate, and that the defendants did not enjoy any franchise from the state. The argument is liable to degenerate into mere logomachy—a play upon words.

It is true they do not enjoy a corporate franchise, or a franchise expressly conferred.

The habit of dealing with corporation franchises is liable to make one forget that there are other franchises.

The privilege of doing any "ordinary or legitimate" business is, in form, a franchise; yes, it is a franchise.

The statute which was construed and upheld in Western Union Telegraph Company v. Mayer, 28 Ohio St. 521, is an example of the exercise of the power of imposing a tax for the privilege of doing business.

But it was insisted that it was imposed there as a "condition of permitting a foreign corporation to do business within the state." That was probably so, because the statute declared that, if the amount assessed was not paid in twenty days after it became due, it should be unlawful for any person or corporation to transact the business of telegraphy. This was a more effective mode of collecting the tax than to simply rely upon the plain remedy for a pecuniary recovery.

Notwithstanding that feature of the statute, its passage was an exercise of the powers of sovereignty to impose a tax for the privilege of doing business. That its non-payment operated as a prohibitory exclusion from the business did not alter its character.

Nor was its nature altered by the fact that the tax was imposed upon a corporation only, and that the corporations were foreign. The power to extend it to persons and domestic corporations was unchallengeable.

The legislature did not deem it wise to embrace these classes within the purview of the law; that is all.

That statute cannot be quibbled away as a parallel of the statute under consideration; nor can the decision in that case as a vindication of the constitutionality of this statute be quibbled away.

The tax imposed upon these defendants is also imposed as a condition to their doing business in this state. The only difference between the statute under consideration and the statute construed in the Mayer case is that under the former the violation of the condition does not work a forfeiture of the right to go on and do business.

The Missouri statute which was construed and sustained in Pacific Express Co. v. Siebert, 142 U. S. 339, is an exact counterpart of this statute. In truth, the Attorney General who drafted our statute says that the latter was copied from the Missouri statute. An answer to part of the challenge of this statute will be found in that decision.

In State ex rel., etc., v. Reimund, 45 Ohio St. 214, a statute which imposed a tax on foreign insurance companies was sustained. That was also an exercise of the power of sovereignty to impose a tax as a privilege of doing the business.

See also Commonwealth v. United States Express Co., 157 Pa. St. 58; S. C. Atl., where a tax on the gross receipts of the express business done by one of these defendants, in that state, was sustained.

The decisions in Wisconsin, Massachusetts and New Hampshire (11 Wisc. 35; 137 Mass. 419, and 60 N. H. 219), are not instructive, because they are founded upon peculiar provisions of their organic laws, the likes of which are not found in our constitution.

Another objection made was that the statute was retroactive.

It is true that the statute requires that the excise tax for each year shall be charged in the month of November, and that it shall be computed by taking two per cent of the amount fixed by the state Board of Appraisers and Assessors on the gross receipts of each company, for business done within the state for the year next preceding the first day of May. But that does not mean that it is a tax for doing the business for the year preceding the first of May. It is obviously a tax for the privilege of doing business during the year which begins May 1st preceding. The gross receipts of the preceding year are adopted as the basis for the computa-

tion. It would be impossible to take the gross receipts of the year for which the tax is to be assessed and charged.

But this is so plainly and unmistakably the meaning of the statute that I shall not waste any more time on this objection.

As an illustration of the ingenuity of counsel, he supposed a case where the Express Company had only begun business April 1st., 1894, and then triumphantly asked how the statute could be applied. An adequate answer was: (1) that neither of these defendants was in that situation; (2) if either had been in that position, the law would not have applied.

It is only an exemplification of the truth that no legislature is so far-seeing that it can, especially in new statutes, anticipate every case that may arise. The legislature that passed this law was no more sagacious than other legislatures.

It was contended that the defendants were entitled to "deduct all amounts paid by them to railroads within the state for transportation of their freight within the state."

The statute is not susceptible of any such construction.

Absurd conclusions should be avoided in the interpretation of statutes.

If this contention was sound the express companies, or some of them at least, might claim that the state owes them for the condescension of doing business in the state

The tax is only charged on the gross receipts realized from Ohio business; that is, business which begins and ends in Ohio. The commandment of the statute is that each company shall make a return of gross receipts "for business done within this state." That is construed as gross receipts for business that begins and ends in the state.

Then the amount paid "for the transportation of its freight within this state" is to be deducted.

The terms "within the state" must bear the same meaning in both connections.

There is nothing in these quoted words, or in their natural force, to authorize the conclusion that the deduction should be made of money paid for transportation of freight "without the state."

This identical language was construed just as the state contends it should be, in the Missouri case (142 U. S. Rep. 339) by the U. S. Supreme Court.

Again, it was insisted that, in no event, could the defendants be made to pay the penalties of fifty per cent for which a recovery is sought.

The only reason assigned was that the state authorities did not make the assessment and a return of the assessment at the time the statute provided. But neither of these departures from the strict letter of the statute prevented the companies from paying the tax within the time prescribed.

If these defendants, or either of them, had been prevented from paying the tax by these delays of the Board of Appraisers and Assessors there would be at least moral merit in the claim that they should be relieved of the penalties.

There was evidence tending to show that the Board erred in its assessments.

But even if the alleged errors had been proved, this court can give no relief.

The statute makes ample provision for the correction of errors and irregularities of the assessors. Their action was judicial in its character, if they had jurisdiction, as they had; their judgment is, therefore, not vulnerable to a collateral attack. If these defendants were aggrieved by their de-

cision they should have exhausted the remedy which the statute itself affords.

It is not claimed that the court adopted a rule of appraisement which conflicts with a constitutional or statutory command, except in one respect, which has already been passed upon.

It cannot be claimed that the assessment is the result of a statute whose design was to discriminate injuriously against the class of persons or corporations or associations to which the defendants belong.

Nor is it claimed that the officers of the Board combined together and established a rule or principle of valuation, the necessary result of which is to tax one species of property higher than another.

Judgments may be entered as follows:

Against the United States Express Company for $6644.98, and interest;

against the Adams Express Co. for $7435.68, and interest;

against the National Express Co. for $342.96, and interest;

and against the American Express Co. for $5019.10, and interest.

Attorney General Richards, for the state.

Lawrence Maxwell, Jr., for defendants.