## LOVELL *v.* DAVIS.

1. A charter-party for the voyage of a vessel from New Orleans to certain designated ports contains a recital that said vessel is "now lying in the harbor of New Orleans," while in point of fact she was then at sea. In an action by the master of the vessel upon the charter-party the jury was instructed that if the defendants knew at the time of executing it that the vessel was at sea, the words "now lying in the harbor" being merely a representation, should be regarded as of no significance. *Held,* that there was no error in the instruction.
2. The charter-party fixed no definite time for the vessel to be at New Orleans ready to receive her cargo. *Held,* that if the master used reasonable diligence in bringing her to that port, the defendants were bound by the contract.
3. Where the bill of exceptions does not show what answer was made to a question put to a witness, error cannot be assigned upon the question.

ERROR to the Circuit Court of the United States for the District of Louisiana.

This action was brought against Lovell & Bailey on a charter-party entered into by them March 14, 1871, for a voyage of the American ship "Adorna," "now lying in the harbor of New Orleans," from the port of New Orleans to Liverpool, between Havre and Hamburg, both inclusive, or Cronstadt. It was agreed between the parties that "this charter shall commence when the vessel is ready to receive cargo at the place of loading, and notice thereof is given to the party of the second part or their agent, and to end on a true delivery of cargo at the port of discharge."

The defence was that by reason of the plaintiff's delay in presenting his vessel at New Orleans for receiving the cargo, the defendants had rescinded the contract, and were justified in doing so. A verdict and judgment were rendered for the plaintiff, the master of the chartered vessel. The defendants sued out this writ of error.

The remaining facts, and the instructions to the jury, are set forth in the opinion of the court.

*Mr. Philip Phillips* and *Mr. W. Hallett Phillips* for the plaintiffs in error.

No counsel appeared for the defendant in error.

MR. JUSTICE MILLER, after stating the facts, delivered the opinion of the court.

The charter-party contains a recital that at the date of its

execution the vessel was lying in the harbor of New Orleans, while the bill of exceptions shows that she was then at sea. The court charged the jury that if at the time the defendants signed the charter-party they knew that the ship was at sea, the words " now lying in the harbor of New Orleans " should be regarded as of no significance.

That language in the charter is not a warranty or contract, but a representation ; and if the charterers *knew* certainly that the vessel was not there, of course they were not deceived or misled by the recital, which was probably part of a printed form that attracted no attention. The evidence on the subject of this knowledge is not in the record, and it is, therefore, to be presumed in favor of the action of the court that it was full and complete. There was no error in this instruction.

The court also charged the jury that as the charter-party fixed no definite time for the vessel to be at New Orleans ready to receive the cargo, the master was bound to use reasonable diligence in bringing her to the port, and was bound to use no more. If he did, the defendants were bound by the contract. If he did not use such diligence, they were not. To this charge also defendants excepted.

To the charge in the abstract there could be no just objection. But plaintiffs in error argue, in effect, that it was not warranted by the testimony.

The evidence tended to show that the master was compelled to cross the bar at the mouth of the Mississippi and to sail one-fourth of the way up the river to the city without the aid of a steam-tug (which was the usual mode of carrying such vessels up to New Orleans), because no such tug was in sight, and that then a tug which offered itself at the request of the defendants was refused because of the exorbitant charge asked for the remaining part of the voyage. The bill of exceptions does not set out all of the evidence, and what is found there is very meagre, especially on this point.

Under what precise circumstances the master refused the aid of the tug which offered its services, to what extent its offer was exorbitant, how it came to be sent there by defendants, and then refused to serve without excessive compensation, are all unknown to us, but were probably clear to the jury. The

charge by the court that the master was bound to use due and reasonable diligence furnished the general rule of law. If there was anything in reference to his refusal to employ the tug which made a more definite instruction proper, counsel for defence should have asked for it. But none was prayed.

We are not able to see, therefore, any error in the charge of the court.

A question was asked the master as to what he would have done if the tug-boat had offered to take him up the river at the usual rates, to which defendants objected, and the question being permitted they excepted.

The answer is not given, and we cannot tell, therefore, whether it was favorable to plaintiff or defendants. It is settled law, at least in this court, that under such circumstances it is the evidence given which constitutes the error, if there be one, and this must be shown by the answer. *Nailor* v. *Williams*, 8 Wall. 107.

We see no error in the record.

*Judgment affirmed.*