JACOB SNYDER and Others, Respondents, *v.* CARMI V. LINDSEY, Appellant, Impleaded with Others.

*Joint stock association — a member may sue for the dissolution thereof — he may show that money paid for the stock was a loan to the association — general objection to evidence competent as to one of several defendants — Code of Civil Procedure,* § 1786.

One or more members of a joint stock association may institute an action for its dissolution whenever a suitable occasion arises rendering it legitimately desirable to wind up its affairs, and the right to bring such an action is not confined to the Attorney-General as is the case where it is sought to dissolve a corporation.

Where an action is brought against two defendants and evidence is offered which is competent against one of them, a general objection to its competency, taken on behalf of both defendants, does not raise the question that the evidence was incompetent as against one of them.

Where a person becomes a member of a joint stock association and receives shares of stock therein, amounting in par value to the amount of money invested by him, he may, on the trial of an action brought to impeach the validity of a chattel mortgage executed to him by the president of such association, as security for such money, show the terms upon which such money was invested; that he occupied a different relation toward the association from that occupied by the other members thereof; that he was, in fact, a creditor of such association, and that the mortgage sought to be impeached was executed in pursuance of the agreement under which he advanced the money and became a member.

APPEAL by the defendant, Carmi V. Lindsey, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of Wyoming on the 16th day of January, 1895, upon the report of a referee.

The plaintiffs and the defendants, other than the defendant Evans, being about eighty, more or less, in number, were what was called a joint stock association, doing business under the name of the Farmers' Exchange, Limited, at Attica, in the county of Wyoming, N. Y.

The association was organized in 1891 for the purpose of carrying on a general mercantile business, adopted a constitution and.,by-laws, elected a president, vice-president, secretary and a manager and treasurer; also directors and an executive committee, and issued stock certificates at ten dollars per share. The business of the company was carried on until November 11, 1893, when the president,

Carmi V. Lindsey, made, in the name of the company, a chattel mortgage on the goods of the association to Grant Lindsey, who delivered to the defendant Evans a bill of sale of them. The latter afterwards sold the goods to the appellant.

This action was brought for the dissolution of the company, etc. referee determined that such mortgage and bill of sale were fraudulent and void, and directed judgment dissolving the association and for the appointment of a receiver, etc.

*O. H. Hopkins*, for the appellant.

*O. P. Stockwell*, for the respondents.

BRADLEY, J.:

It is urged on the part of the appellant that the joint stock association created by the parties plaintiff and defendant has the nature of a corporation, and is a corporation in such sense that the remedy available to members of a partnership to bring suit for its dissolution has no application to it, and, therefore, that an action for the dissolution of the association can be maintained only by the Attorney-General in the name of the People, as provided by the statute relating to corporations. (Code Civ. Proc. § 1786.) The question was raised at the trial, and, as we think, was properly overruled. It is true that in this State a joint stock association has certain attributes of a corporation for the purposes of the conduct of its business, and of suing and being sued. (Laws of 1849, chap. 258; Laws of 1853, chap. 153; Laws of 1854, chap. 245; Laws of 1867, chap. 289.) But, unlike a corporation, the common-law liability of its members upon the obligations legitimately created or assumed through the acts of the officers or agents of the association remains. (*People ex rel. Winchester* v. *Coleman*, 133 N. Y. 279.)

The nature of a joint stock association was the subject of some consideration in *People ex rel. Platt* v. *Wemple* (117 N. Y. 136) where it was held that the United States Express Company, a joint stock company, was subject to taxation as such upon its business, pursuant to the Laws of 1880 (Chap. 542), as amended by the Laws of 1881 (Chap. 361, § 3), which last cited section provides that every corporation, joint stock company or association, incorporated

or organized under any law of this State or any other State or country, and doing business in this State, with certain exceptions, should be subject to and pay a tax upon its corporate franchise or business into the treasury of the State annually.

The character of the association formed by the parties to this rests on the contract into which they entered and which they adopted for its creation, and their individuality in point of personal liability to creditors remains as effectually as if they had created a partnership. No substantial reason, therefore, exists in the nature of the association for the denial of the right to one or more of its members to institute an action for its dissolution whenever a suitable occasion arises rendering it legitimately desirable to wind up its affairs.

In November, 1893, the appellant, as president of the association, made to Grant Lindsey a chattel mortgage upon all of the goods of the association, for the purpose, as expressed in it, of securing to him the payment, on January 14, 1894, of $1,500, being the amount alleged to have been loaned by him to the association, and giving to the mortgagee power, if he deemed himself unsafe, to take, before that time, the possession of and sell the property. Afterwards, on the same day, the mortgagee took possession of the property, and, by a bill of sale, sold it to the defendant James D. Evans. This bill of sale was made without consideration other than the undertaking of Evans to proceed to sell the goods and account to his vendor for the proceeds, and such was its purpose.

Subsequently, and on or about the sixteenth day of November, an attachment in behalf of a creditor of the association was levied on the goods, and thereupon an arrangement was made by Evans with the appellant, in pursuance of which the appellant was to pay the debt due to the attaching creditor, which, with the costs and expenses, amounted to $669, and take title to the property. Evans sold the goods to him. He paid that debt and also paid some other debts which the association owed, which payments were to be applied upon the purchase price of the property.

The leading question on the trial was whether or not the chattel mortgage and those sales were effectual to transfer the title to the goods. The determination of the referee that they were not, was founded upon the fact, as found by him, that the mortgage to

Grant Lindsey and the bill of sale by him to Evans were made without consideration and with the unlawful intent to enable Grant and Carmi V. Lindsey to reimburse themselves for moneys theretofore invested by them in the business, and that such transfers were made without authority.

It may be that the authority relied upon in executing the mortgage was in the proceedings of the board of directors of January 28, 1893, and a power of attorney made in October following.

As evidenced by the record of the proceedings of that meeting of the board of directors, Grant Lindsey and W. A. Cowden were each to invest $1,000, take 100 shares of the stock of the association, and at the end of the year to have the privilege of withdrawing the amount of money so invested by selling goods from the stock in the store at the regular rates. Afterwards Grant Lindsey put in $1,000 and Cowden $500. The latter assigned his stock and claim to Grant Lindsey. The power of attorney above referred to was subscribed by upwards of fifty members of the association, and, among other things, recited and provided that Grant Lindsey had put $1,500 in the business of the company, and that the president was empowered, whenever Grant Lindsey might wish to resign his position as manager, to give him a bill of sale of the goods in the association's store or to secure him for such $1,500. This money evidently was furnished to assist the association in the business, and the taking of the stock did not necessarily conclude Lindsey and Cowden from treating the money advanced, as a loan to it, as distinguished from the shares which were represented by certificates to members, if it was put in pursuant to any arrangement duly made to so distinguish the relation arising out of such advance.

It was, therefore, competent for the defendants to prove under what arrangement the money was advanced by Lindsey and Cowden.

A witness, who was one of the directors and who was present at the meeting of the board before mentioned, was asked " What was done at that time ? * * * What was said at that meeting in regard to what should be done with the money by the company?" The plaintiffs' objections to the evidence called for by those questions were sustained and exceptions taken.

The defendants' counsel then offered to prove "that this money was put in by Lindsey and Cowden upon different terms than which the other members put money into the association, and that they were to have the privilege of selling the goods and drawing their money out in that way." This was also excluded upon the plaintiffs' objection, and an exception was taken by the defendants. There is no apparent reason for the exclusion of the evidence unless it was on the assumption that the facts embraced within the questions and offer were covered by the record of the proceedings, before referred to, of the board. It may be that in such record the terms under which the money in question was advanced by Lindsey and Cowden are amply expressed. But it does not necessarily so appear by the offer as made of proof, which was to show in some legitimate manner that the money advanced by them was put into the concern upon terms differing from those upon which the other members had put in money and taken certificates of stock.

If the relation of Lindsey and Cowden to the association in respect to the $1,500 was distinguished from that of the other members who were stockholders, in that the former loaned money to and were creditors of the association, although stock was issued to them, that might have been treated as an important fact by the referee, and he might not have found, as he did, that the "mortgage was in fact executed and delivered without consideration, and there existed no indebtedness whatever to said Grant Lindsey for money loaned or otherwise." This finding may have been founded on his view, as expressed in the opinion of the referee, that there was "no pretense furnished by the evidence in the case that as to these moneys they occupied any other or different relation to the association than their associates. In other words, the moneys invested by them were put in as capital stock and not otherwise." It is, however, suggested that if there was any error in the exclusion of the evidence so offered it was cured by that given later in the trial by the appellant, that "this agreement that I executed to him (Grant Lindsey) was given to him to secure the money he paid under this resolution." In this statement the witness evidently had reference to the record of the proceedings before mentioned of the board of directors, and, coming from the appellant, that statement has such force against him as to make it appear quite clearly that the evidence offered and

excluded could have added nothing advantageous to the defense not embraced in such record of proceedings. For that reason the exclusion of the evidence was harmless to him.

Upon the question of the value of the goods there was a conflict in the evidence. They were by schedule inventoried at $1,528.88. The referee found that such was their value. The defendants gave evidence tending to prove that they were of much less value. A witness called by the plaintiffs' counsel was asked "What did Evans say to you in regard to the inventory?" The defendants' objection to the competency of the evidence was overruled and an exception taken. It may be assumed that it was inadmissible as against the appellant. But, as Evans was a party defendant appearing and defending, his declarations were admissible as against himself, and, therefore, the general objection of the defendants did not render the exception as taken available to the appellant. The same may be said of another exception taken in like manner to the reception of the similar evidence of another witness.

The most of the goods had been sold by the appellant when this action was commenced, and the evidence tends to prove that the proceeds of his sales, including the value of the goods unsold, amounted to very much less than the sum at which they were inventoried. The evidence apparently presents a question of very much doubt whether the property was of the value so represented by the inventory, but in view of the conflict in the evidence on the subject it cannot on this review reasonably be held that the value was less than that adopted by the referee upon the facts as found by him and which had the support of evidence.

No further question requires consideration. The judgment should be affirmed.

LEWIS, WARD and ADAMS, JJ., concurred.

Judgment affirmed, with costs.