Argued 25 November; decided 30 December, 1901.

## BINGHAM *v.* LIPMAN.

[67 Pac. 98.]

40   363
†40   409
‒‒‒‒‒‒‒
40   363
45   573

PLEADING—DAMAGES FOR TRESPASS.

1. In actions for damages resulting from trespass it is allowable to plead all the circumstances accompanying the act and that constitute a part of the occurrence, so as to show the purpose and extent of the injury.

DUPLICITY IN PLEADING.

2. Duplicity in pleading consists in setting forth and relying upon more than one cause of action; as, where plaintiff, who had been in defendants' employ, alleged that defendants unlawfully "conspired" for the purpose of extorting money from her, and that she was induced to enter their office, where she was charged with larceny of articles from their store, and threatened with arrest and disgrace, and that they locked her in the store, and kept her for several hours, and extorted money from her, the complaint was not bad for duplicity, as a series of unlawful acts aimed at and contributing to the injury complained of may be averred, without violating the rule against duplicity.

EVIDENCE OF DECLARATIONS AGAINST INTEREST.

3. It is always competent to give in evidence statements made by a party against his interest.

INSTRUCTION LIMITING APPLICABILITY OF EVIDENCE.

4. Where testimony is admitted that is claimed to be incompetent as against some of several parties, the objectors should ask an instruction limiting its applicability.

PRESENTING THEORIES OF THE RESPECTIVE PARTIES.

5. Parties are entitled to have their respective theories of a case fairly presented to the jury, but the manner of the presentation rests with the judge, and if he chooses to set forth certain opposing claims in close association it is his privilege to do so.

FORCE NECESSARY TO CONSTITUTE UNLAWFUL IMPRISONMENT.

6. Submission to threatened and reasonably apprehended force constitutes an unlawful imprisonment—actual force need not have been used nor threatened.

APPEAL—PRESUMPTION OF SUFFICIENCY OF EVIDENCE.

7. Where the record on appeal does not purport to contain all the evidence on a point on which an instruction was given, it will be presumed that the evidence was sufficient to support the instruction.

PUNITIVE DAMAGES IN TORT ACTIONS.

8. In actions for tort punitive damages may be allowed under proper circumstances: *Sullivan* v. *Oregon Ry. & Nav. Co.* 12 Or. 392; *Day* v. *Holland,* 15 Or. 464, and *Osmun* v. *Winters,* 30 Or. 177, followed.

TORT BY CORPORATION—LIABILITY FOR ACTS OF OFFICERS.

9. Where the officers of a corporation, who exercise the whole executive power, participate in and direct all that is done in the commission of a tort,

their malicious, wanton, or oppressive intent may be treated as the intent of the corporation, and it may be compelled to respond in punitive damages.*

INSTRUCTIONS MUST BE REASONABLY CONSTRUED.

10. The instructions to a jury must be reasonably construed in the light of the evidence that has been received, and the two should be considered together; as, where the evidence showed that the chief executive officials of a corporation either did or authorized all the acts constituting a tort, instructions regarding the liability of the corporation for punitive damages must be interpreted accordingly, and are not to be deemed erroneous because they may be broad enough to make the corporation liable in such damages for the acts of any of its officials, regardless of rank.

LIABILITY OF TORTFEASORS.

11. In an action of tort against a corporation and its managing agents, on whose conduct its liability depended, a verdict against the corporation only is not void, since the defendants are jointly or severally liable.

ACTION FOR FALSE IMPRISONMENT—PLEADING CONSPIRACY.

12. In an action of damages against several persons for false imprisonment an allegation of conspiracy may be treated as matter in aggravation or explanation, and is not an essential averment, since the recovery may be joint or several.

From Multnomah: ALFRED F. SEARS, JR., Judge.

Action by Ada Bingham against Lipman, Wolfe & Company, Isaac N. Lipman, and Adolph Wolfe. The defendant Lipman, Wolfe & Company is a corporation engaged in conducting a department store in the City of Portland. The defendants Adolph Wolfe and Isaac N. Lipman are, respectively, its vice-president and secretary. They are also its managing agents, and, together with Solomon Lipman and Will Lipman, own all the stock of the corporation. For some time prior to March 30, 1899, the plaintiff was employed by the firm as a clerk in one of its departments. About 5 o'clock in the afternoon of the day named, defendant Lipman called her into the office and accused her of having embezzled and appropriated to her own use a portion of the money received by her on the sale of some articles belonging to the firm,—especially a corset sold the day before. According to her testimony, she was compelled to remain in the store without food or drink, or an opportunity of seeing or consulting her friends, until twenty-five

---

*NOTE.—See article, Exemplary Damages in Actions Against Corporations, 55 Cent. Law Jour.—REPORTER.

minutes after 11 o'clock at night, when, in order to obtain her liberty, she was compelled by threats and intimidation to promise to pay to the firm $92.50,—the estimated value of the goods alleged to have been stolen by her. On the next day she called at the store and paid $30 of her own money and $5 which belonged to the firm, but thereafter refused to make any further payment, and a few days later brought this action against the corporation and Lipman and Wolfe individually.

The complaint, after setting out the corporate capacity of the defendant Lipman, Wolfe & Company, the official relations of the other defendants thereto, and the employment of the plaintiff, avers, in substance, that the three defendants unlawfully and maliciously conspired together for the purpose of extorting money from the plaintiff, and, to that end, unlawfully to charge her with the crime of larceny in the storehouse of the defendant corporation; that, in pursuance of such conspiracy, she was induced to go to their private office, under the pretext that the managers desired to see and speak to her on business; that they then and there charged her with having committed larceny in the store, and threatened that she would be arrested and publicly charged with the crime, and thereby disgraced and held up to the contempt of the community, unless she admitted her guilt and made restitution for the property alleged to have been stolen; that, notwithstanding such threats, she protested her innocence, and refused to admit that she was guilty of any offense or to turn over any property whatever, whereupon the defendants caused her to be locked up in the store, and to be kept therein from 6 until 11 o'clock, without food or drink, during which time she was not permitted to see any of her friends; that she remained in the store so unlawfully imprisoned during all the time mentioned, and, in order to purchase her freedom, was compelled by the defendants to release her claim to $9 due her for wages, and to promise to pay an additional sum of $92; that the plaintiff was thus maliciously and wantonly deprived of her liberty for about the space of five hours, was accused by the defendants of having committed the crime of larceny, and threat-

ened with the disgrace of arrest, and was thereby compelled, in order to be released from her imprisonment, to pay them the money referred to; that the defendants, one and all, knew that plaintiff had committed no crime whatever, and that the conspiracy and all of the acts done thereunder by the defendants were with the sole intent on their part of extorting money from her; that, by reason of the acts and conduct of the defendants, she has been and is damaged in the sum of $10,000. A motion to strike out the complaint, and also portions thereof, upon the ground that two causes of action, viz., for false imprisonment and extortion, were improperly united, was overruled. A demurrer thereto upon the same ground was also overruled.

Defendants answered jointly, denying the material allegations of the complaint, and, for an affirmative defense, alleged that, while the plaintiff was employed by the defendant Lipman, Wolfe & Company, she embezzled and fraudulently converted to her own use money and property belonging to the firm in the aggregate amounting to $92.75, which she voluntarily and without solicitation on the part of the defendants, or any or either of them, offered to repay, and did, on the thirty-first of March, after the matters set forth in the complaint had occurred, voluntarily and without solicitation on the part of the defendants, pay to the firm the sum of $30. A reply was filed, putting in issue the new matter alleged in the answer.

A trial resulted in the following verdict:
"Ada Bingham
        *v.*
Lipman, Wolfe & Co."

We, the jury impaneled to try the above-entitled cause, find for the plaintiff, and assess her damages at $2,000."

Judgment was thereafter rendered upon this verdict in favor of the plaintiff and against the defendant corporation only, from which it appeals.        AFFIRMED.

For appellant there was a brief over the name of *Cotton, Teal & Minor,* and *James Gleason,* with an oral argument by *Mr. Wirt Minor.*

For respondent there was a brief and an oral argument by *Mr. Henry E. McGinn.*

MR. CHIEF JUSTICE BEAN, after stating the facts, delivered the opinion of the court.

1. It is contended that two causes of action are improperly united in the complaint,—one, for false imprisonment; the other, for conspiracy to extort money. But in an action for trespass the plaintiff may charge and prove all the circumstances accompanying the act, and which were a part of the *res gestae,* in order to show the temper and purpose with which the trespass was committed, and the extent of the injury, under the rule that a series of unlawful acts, all aimed at a single result, and contributing to the injury complained of, may be averred in the complaint without violating the rule against duplicity: *Oliver* v. *Perkins,* 92 Mich. 304 (52 N. W. 609) ; *Rice* v. *Coolidge,* 121 Mass. 393 (23 Am. Rep. 279).

2. To constitute duplicity in a pleading, it is not enough that it appears therefrom that the plaintiff has more than one cause of action, but it must appear that he relies on more than one as a ground of recovery. "In order to constitute duplicity," says the Supreme Court of Connecticut, "it is not sufficient that a count in a declaration shows merely that the plaintiff has various causes of action against the defendant, although the contrary might be inferred from the general and loose definitions of duplicity in some of the elementary treatises on pleadings. It is necessary, further, that those various causes of action, or more than one of them, should be claimed and relied on as distinct grounds of recovery. * * * For if it appears that the plaintiff seeks to recover upon only one of them, and makes no claim on any of the others, as a distinct, additional, or independent ground of recovery, the mere circumstance that he has other valid claims against the de-

fendant, which he might, but does not, seek to enforce in the
suit, ought not to deprive him of a recovery on the cause of
action on which alone he seeks to recover. And in such a case
there must be no multiplicity of issues, to avoid which du-
plicity is discountenanced": *Raymond* v. *Sturges*, 23 Conn.
133, 145. In *Brewer* v. *Temple*, 15 How. Prac. 286, the com-
plaint alleged that the defendant made an assault upon the
plaintiff, and then and there published and declared in the
presence and hearing of other persons certain slanderous
words of him, whereby he was greatly injured in his person,
character, feelings, and circumstances. Upon demurrer to the
complaint on the ground that two causes of action—one for
assault and battery, and the other for slander—were improp-
erly united, the court held the objection not well taken, and
that the complaint contained but a single cause of action, be-
cause all the allegations related to a single transaction, and
were a part of the *res gestae*. The same rule is announced by
Mr. Bliss in his work on Code Pleading (2 ed.), § 292, and by
the following authorities: *Hildebrand* v. *McCrum*, 101 Ind.
61; *Conaughty* v. *Nichols*, 42 N. Y. 83; *Miller* v. *Bayer*, 94
Wis. 123 (68 N. W. 869).

3. On the trial a Mrs. Jester, who had been charged by the
managing officers of the corporation with having embezzled
and appropriated to her own use certain property belonging to
the firm, was called as a witness. It appears from the bill of
exceptions that the plaintiff offered to show by her that on the
thirty-first day of March, 1899, the defendant Wolfe told her
they had made an agreement with the plaintiff to pay $92.50,
and if she (Mrs. Jester) would pay $100 her offense would be
kept from the public, but, if not, they would send her "over
the road to the fullest extent of the law," and at the same time
said to her: "You have got a husband to support you, and you
have some property. Out there in the outer office there is a
woman [referring to the plaintiff]; she has no money; she has
nothing at all; and still we made her pay us $30, and she is go-
ing to pay us what little she is able to earn from now on." Ob-
jection to the admission of such testimony on the ground that

it was immaterial, irrelevant, and incompetent was overruled, and such ruling is assigned as error. The record, however, does not show that the evidence was in fact admitted, or that Mrs. Jester gave any testimony in reference to the matters mentioned. It would seem, therefore, that the assignment of error could be disposed of under the rule that where the record on appeal does not show how a question permitted by the court against objection was answered, or whether it was answered at all, the ruling of the trial court will not be disturbed: *Lovell* v. *Davis,* 101 U. S. 541; *Turner* v. *United States,* 66 Fed. 280 (13 C. C. A. 436); *Cecconi* v. *Rodden,* 147 Mass. 164 (16 N. E. 749); *Haney* v. *Clark,* 65 Tex. 93; *Carpenter* v. *Corinth,* 58 Vt. 214 (2 Atl. 170); *Devoe* v. *Singleton,* 80 Md. 68 (30 Atl. 614). But conceding the question to be properly here, and that the witness testified substantially as stated in the offer, no error was committed in the admission of the evidence. It was a declaration by defendant Wolfe against his interest, and, as such, competent against him.

4. If irrelevant or incompetent as to the other defendants, the remedy was by a request for an instruction from the court limiting its operation to the defendant Wolfe alone: *Ponder* v. *Cheeves,* 104 Ala. 307 (16 South. 145); *Mighell* v. *Stone,* 175 Ill. 261 (51 N. E. 906); *Snyder* v. *Lindsey,* 92 Hun, 432 (36 N. Y. Supp. 1037); *Jno. Hutchinson Mfg. Co.* v. *Pinch,* 107 Mich. 12 (64 N. W. 729, 66 N. W. 340); *Miller* v. *Potter,* 59 Ill. App. 125.

5. The defendants requested the court to charge the jury: "If you find from the evidence that the plaintiff remained in the store of Lipman, Wolfe & Company, on the evening and night of the thirtieth of March, 1899, voluntarily and of her own free will and accord, then I charge you that this does not constitute an unlawful imprisonment as charged in the complaint." This instruction was given as requested, but the court, on its own motion, added thereto the following: "Submission to the threatened and reasonably apprehended use of force is not to be considered as a consent to the restraint by

the one claiming to have been imprisoned.'' Objection is made to the modification on the ground that the defendants were entitled to have their theory of the case submitted to the jury ''without any connection with other matters,'' and because there was neither allegation nor proof that force was used to compel the plaintiff to remain in the store. The rule is unquestioned that every litigant is entitled to have his theory of the case, within the pleadings and proof, fully and fairly submitted to the jury, but he cannot complain if the theory of the other side is submitted at the same time.

6. The modification of the instruction was proper and within its pleadings. It is not based on the theory that actual force was used, but is to the effect that submission to reasonably apprehended force is sufficient to constitute unlawful imprisonment, although no actual force may have been used or threatened; and this is in accord with the rule of law upon the subject: 12 Am. & Eng. Ency. Law (2 ed.), 734.

7. The record does not purport to contain all the evidence on this point; hence we must assume there was sufficient to support the instruction.

8. [The defendants requested the court to charge the jury: ''In estimating the damages done to the plaintiff by the defendant corporation, Lipman, Wolfe & Company, you cannot award the plaintiff any sum of money by way of punishing said defendants.'' The court refused to give the instruction as requested, but charged the jury that, if they found for the plaintiff, they might, if actual malice was shown, in addition to compensatory damages, allow a further sum by way of punitive or exemplary damages. This brings up the disputed question as to whether punitive or vindictive damages are to be allowed in cases of tort, but, as we understand it, this court is committed to the affirmative of the proposition:] *Sullivan* v. *Oregon Ry. & Nav. Co.* 12 Or. 392 (7 Pac. 508, 53 Am. Rep. 364); *Kelley* v. *Highfield,* 15 Or. 277 (14 Pac. 744); *Day* v. *Holland,* 15 Or. 464 (15 Pac. 855); *Osmun* v. *Winters,* 30 Or. 177 (46 Pac. 780). And as said by the Supreme Court of Wisconsin in *Brown* v. *Swineford,* 44 Wis. 282 (28 Am. Rep. 582):

"If a change should now be made, it lies with the legislature, rather than the court, to abrogate or modify a rule running through the entire body of the reports of this state. As was once well observed, courts cannot be always inquiring into the original justice or wisdom of rules long established and accepted."

9. It is argued, however, that the rule should not be applied in an action against a corporation for an injury caused by the misconduct of its agents or servants, unless the act was previously authorized or subsequently ratified by the board of directors or other governing body of the corporation. Upon this question there is a conflict of judicial opinion. Mr. Thompson in his late work on corporations, expresses the view that the doctrine maintained by the majority of the state courts is that "the rule of *respondeat superior*, which makes a corporation liable for the malicious torts of its agents or servants, makes it liable in exemplary damages for such torts, whether the act were originally authorized or subsequently ratified by its governing body or not": 5 Thompson, Corp. § 6384. For "the true theory is that the rule of exemplary damages is a rule, not of logic, but of public safety; that the public know the corporation only through its ministerial agents and servants; that the corporation touches the public only by the hands of these agents and servants; and that consequently, so far as the public rights are concerned, they are to be regarded as the corporation, precisely as the doctrine of *respondeat superior* identifies the principal and his agent for the purpose of protecting third persons:" 5 Thompson, Corp. § 6389. Whatever the true rule may be, however, where it is sought to charge a corporation with exemplary damages on account of the malicious acts of its subordinate agents, there can be no room for controversy that where, as in this case, the officers actually wielding the whole executive power of the corporation participated in and directed all that was planned and done, their malicious, wanton, or oppressive intent may be treated as the intent of the corporation itself, for which it is liable to answer

in exemplary damages: *Denver, etc. R. Co.* v. *Harris,* 122 U. S. 597 (7 Sup. Ct. 1286).

10. A contention is made that the instructions of the court were broad enough to make the corporation liable in exemplary damages for the malicious acts of any and all of its agents, without regard to their rank or authority. But the instructions must be interpreted in view of the testimony, which showed that the injury complained of by the plaintiff was either done or authorized by the managing agents and sole representatives of the corporation in the state, and consequently was the act of the corporation itself. Mr. Lipman, the secretary and one of the managing agents, was the principal actor in the matter; and, although the testimony is not all in the record, there is sufficient to indicate that his acts were with the knowledge and approval of Mr. Wolfe, the vice president of the corporation. Wolfe was present during part of the time plaintiff was in the office being interrogated by Mr. Lipman, and did not, on behalf of his principal repudiate Mr. Lipman's acts, but, on the contrary, advised her to comply with his wishes, because he "is a very hard man, and will do just exactly what he says he will do." So we think there is enough in the record to show beyond controversy that both Lipman and Wolfe participated in and sanctioned all that was done, and their acts were binding upon their principal, the defendant corporation.

The next assignment of error, based on the alleged misconduct of counsel, was not pressed at the argument. We have nevertheless examined the record, and are of the opinion that the assignment presents no reversible error.

11. And finally it is contended that the verdict is insufficient to support the judgment, because it is against the corporation only, and not against the other defendants, who are admitted to have been its managing agents, and through whose conduct it became liable, if at all. This apparent inconsistency was a proper subject for consideration by the trial court on the motion for a new trial, but it does not render the

verdict void. The action is for tort, and the jury had authority to render a verdict against all or any of the defendants.

12. The argument is made, however, that because the complaint alleged a conspiracy, and the court charged the jury that the plaintiff could not recover unless a conspiracy was proved, the verdict was contrary to the pleadings and the instructions of the court, and therefore cannot stand. In an action of this kind, proof of a conspiracy is not essential to a recovery. It may be pleaded and proved as aggravating the wrong, and enabling the plaintiff to recover against all as joint tortfeasors. If he fails in the proof, however, he may still recover against such as are shown to be guilty of the tort without such agreement. The question arose in *Parker* v. *Huntington*, 2 Gray, 124,—an action against two for maliciously conspiring to have the plaintiff indicted for perjury, —and the court said: ''The charge of conspiracy is mere surplusage, intended and used as matter of aggravation, and therefore not necessary to be alleged or proved. The gist of the action is not the conspiracy, but the damage done to the plaintiff by the acts of the defendants; and this is equally great, whether it be the result of a conspiracy, or of the act of a single individual. The insertion in the declaration * * * that the acts done were in pursuance of a conspiracy does not change the nature of the action. It is nevertheless an action on the case, and is to be tried and determined upon the well-settled rules applicable to that form of action.'' And the same ruling was made in *Keit* v. *Wyman*, 67 Hun, 337 (22 N. Y. Supp. 133); *Davis* v. *Johnson*, 101 Fed. 952 (42 C. C. A. 111); *Doremus* v. *Hennessy*, 62 Ill. App. 391; *Van Horn* v. *Van Horn*, 52 N. J. Law, 284 (20 Atl. 485, 10 L. R. A. 184). See, also, 4 Ency. Pl. & Pr. 738. If the defendant corporation was guilty of the wrong charged, it cannot complain because the case was tried and submitted upon the erroneous theory that proof of a conspiracy was essential to a recovery, since such theory is more favorable than it has a right to ask.

The judgment is affirmed.                          AFFIRMED.