| | |
|---|---|
| 133 | 279 |
| 147 | 611 |
| 133 | 279 |
| e172 | 579 |
| 172 | 580 |
| 133 | 279 |
| 78 AD | 616 |

THE PEOPLE ex rel. LOCKE W. WINCHESTER, as Treasurer, etc., Respondent, *v.* MICHAEL COLEMAN et al., Commissioners of Taxes and Assessments, etc., Appellants.

Notwithstanding the various legislative enactments extending the powers of joint-stock companies, and clothing them with many of the essential attributes possessed by and characteristic of corporations (Chap. 258, Laws of 1849; chap. 153, Laws of 1853; chap. 245, Laws of 1854; chap. 289, Laws of 1867), the distinction between the two classes of organizations is still preserved, and a joint-stock company is not taxable upon its capital, under the provision of the Revised Statutes (1 R. S. 414, § 1), subjecting "all monied or stock corporations deriving an income or profit from their capital or otherwise," to such a tax.

(Argued April 12, 1892; decided May 24, 1892.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made February 13, 1891, which affirmed a judgment in favor of plaintiff, entered upon a decision of the court on trial at Special Term, vacating an assessment.

This was a proceeding by certiorari to review the action of the commissioners of taxes and assessments of the city of New York, in imposing an assessment upon the capital stock of the

National Express Company, a joint-stock company, of which the relator is treasurer, for the year 1888.

The facts, so far as material, are stated in the opinion.

*George S. Coleman* for appellants.   If shown to possess the essential characteristics of a corporation, an associated body must be deemed in law to be a corporation, whether brought into being by a special act of the legislature, or by compliance with the provisions of general law, or acquiring its powers by accepting from the legislature the grant of corporate privileges. (Laws of 1838, chap. 260, §§ 18, 24; *Thomas* v. *Dakin*, 22 Wend. 9; *Warner* v. *Beers*, 23 id. 103 ; *People* v. *Niagara*, 4 Hill, 20; 7 id. 504; Laws of 1880, chap. 542 ; Laws of 1881, chap. 361; Laws of 1885, chap. 505 ; *People* v. *N. R. S. R. Co.*, 121 N. Y. 582.)   The National Express Company possesses all the essential features of a corporation as the word is used in the Constitution and statutes of New York.   It is, therefore, a corporation.   (Const. art. 8, §§ 1, 3 ; *Sandford* v. *Bd. Suprs.*, 15 How. Pr. 172.)   Even if the company should not be held to be a strict corporation, so called, it should be deemed a corporation for purposes of taxation on its capital stock or personal property.   Any other determination would involve an injustice either to the shareholders of the company or to the general taxpayers of the state.   (Laws of 1881, chap. 361, § 8.)

*James C. Carter* for respondent.   The single question in this case is whether the National Express Company was, in the year 1888, a corporation within the meaning of that term as employed in title 4, chapter 13, part I, of the Revised Statutes, so as to subject it to taxation as a corporation upon its capital stock.   This question must be answered in the negative.   (Laws of 1849, chap. 258; Laws of 1851, chap. 455 ; Laws of 1853, chap. 153 ; Laws of 1880, chap. 245, §§ 26, 28 ; Laws of 1854, chap. 245 ; Laws of 1867, chap. 189 ; Story on Part. § 319 ; *Tyrrell* v. *Washburn*, 6 Allen, 466 ; *Skillman* v. *Luchman*, 23 Cal. 198 ; Lindley on Part.   598, 1085, 1093, 1094; *Warner* v. *Burs*, 23 Wend. 103; *King* v. *Webb*, 14

East. 406; *Duvergnir* v. *Fellows*, 5 Bing. 248; *Josephs* v. *Pebrer*, 3 B. & C. 639; *Dartmouth College* v. *Woodward*, 4 Wheat. 518; *Gifford* v. *Livingston*, 2 Den. 380; Laws of 1875, chap. 611; *Fletcher* v. *Peck*, 6 Cranch, 87; *Thomas* v. *Dakin*, 22 Wend. 9; *Supervisors of Niagara* v. *People*, 7 Hill, 504; *People* v. *Watertown*, 1 id. 616; *Gillet* v. *Moody*, 3 N. Y. 479; *Robinson* v. *Bank of Attica*, 21 id. 406; *Witherhead* v. *Allen*, 3 Keyes, 564; *McCuffin* v. *Dinsmore*, 4 Abb. [N. C.] 241; *N. Y. M. I. Works* v. *Smith*, 4 Duer, 362; *Whitman* v. *Hubbell*, 30 Fed. Rep. 81; *Taft* v. *Ward*, 106 Mass. 518; *Bodwell* v. *Eastman*, Id. 525; *Taft* v. *Warde*, 111 id. 518; *Lott* v. *Dinsmore*, Id. 45; *Boston* v. *Albany*, 128 id. 445; *Frost* v. *Walker*, 60 Me. 468; *Bacon* v. *Dinsmore*, 42 How. Pr. 377.)

Finch, J. The relator was taxed upon its capital on the ground that it had become a corporation within the meaning of the provision of the Revised Statutes which enacts that " all monied or stock corporations deriving an income or profit from their capital or otherwise, shall be liable to taxation on their capital in the manner hereinafter prescribed." (1 R. S. title 4, chap. 13, part 1.) The company was formed as a joint-stock company or association in 1853 by a written agreement of eight individuals with each other, the whole force and effect of which, in constituting and creating the organization, rested upon the common-law rights of the individuals and their power to contract with each other. The relation they assumed was wholly the product of their mutual agreement and dependent in no respect upon the grant or authority of the state. It was entered into under no statutory license or permission, neither accepting nor designed to accept any franchise from the sovereign, but founded wholly upon the individual rights of the associates to join their capital and enterprise in a relation similar to that of a partnership. A few years earlier the legislature had explicitly recognized the existence and validity of such organizations, founded upon contract and evolved from the common-law rights of the citizens. (Laws of 1849, chap.

258.) That act provided that any joint-stock company or association, which consisted of seven or more members, might sue or be sued in the name of its president or treasurer, and with the same force and effect, so far as the joint property and rights were concerned, as if the suit should be prosecuted in the names of the associates. But the act explicitly disclaimed any purpose of converting the joint-stock associations recognized as existing, into corporations by a section prohibiting any such construction. (§ 5.) In 1851 the act was amended in its form and application, but in no respect material to the present inquiry. There is no doubt, therefore, that when the company was formed and went into operation the law recognized a distinction and substantial difference between joint-stock companies and corporations and never confused one with the other, and that the existing statute which taxed the capital of corporations had no reference to or operation upon joint-stock companies or associations.

But two things have since occurred. The legislature, while steadily preserving the distinction of names, has with equal persistence confused the things by obliterating substantial and characteristic marks of difference, until it is now claimed that the joint-stock associations have grown into and become corporations by force of the continued bestowal upon them of corporate attributes. It is said, and very probably correctly said, that the legislature may create a corporation, without explicitly declaring it to be such, by the bestowal of a corporate franchise or corporate attributes, and the cases of banking associations are referred to as instances of actual occurrence. (*Thomas* v. *Dakin*, 22 Wend. 9 ; *Bank of Watertown* v. *Watertown*, 25 id. 686 ; *People* v. *Niagara*, 4 Hill, 20.) It is added that such result may happen even without the legislative intent, and because the gift of corporate powers and attributes is tantamount to a corporate creation. It is then asserted that a series of statutes, beginning with the act of 1849, has ended in the gift to joint-stock associations of every essential attribute possessed by and characteristic of corporations (Laws of 1853, chap. 153, Laws of 1854, chap. 245,

Laws of 1867, chap. 289); that the lines of distinction between the two, however far apart in the beginning, have steadily converged until they have melted into each other and become identical; that every distinguishing mark and characteristic has been obliterated, and no reason remains why joint-stock associations should not be in all respects treated and regarded as corporations.

Some of this contention is true. The case of *People ex rel. Platt* v. *Wemple* (117 N. Y. 136), shows very forcibly how almost the full measure of corporate attributes has, by legislative enactment, been bestowed upon joint-stock associations, until the difference, if there be one, is obscure, elusive and difficult to see and describe. And yet the truth remains that all along the line of legislation the distinctive names have been retained as indicative and representative of a difference in the organizations themselves. As recently as the acts of 1880 and 1881, which formed the subject of consideration in the *Wemple* case, the legislature, dealing with the subject of taxation and desiring to tax business and franchises, imposed the liability upon "every corporation, joint-stock company or association whatever now or hereafter incorporated or organized under any law of this state." It is significant that the words "or organized" were inserted by amendment, and evidently for the understood reason that joint-stock companies could not properly be said to be "incorporated," but might be correctly described as "organized" under the laws of the state. This persistent distinction in the language of the statutes I should not be inclined to disregard or treat as of no practical consequence, when seeking to arrive at the true intent and proper construction of the statute, even if I were unable to discover any practical or substantial difference between the two classes of organizations upon which it could rest, or out of which it grew, for the distinction so seduously and persistently observed would strongly indicate the legislative intent, and so the correct construction.

But I think there was an original and inherent difference between the corporate and joint-stock companies known to

our law which legislation has somewhat obscured, but has not destroyed, and that difference is the one pointed out by the learned counsel for the respondent, and which impresses me as logical and well supported by authority. It is that the creation of the corporation merges in the artificial body and drowns in it the individual rights and liabilities of the members, while the organization of a joint-stock company leaves the individual rights and liabilities unimpaired and in full force. The idea was expressed in *Supervisors of Niagara* v. *People* (7 Hill, 512), and in *Gifford* v. *Livingston* (2 Den. 380), by the statement that the corporators lost their individuality and merged their individual characters into one artificial existence; and upon these authorities a corporation is defined on behalf of the respondents to be " an artificial person created by the sovereign from natural persons and in which artificial person the natural persons of which it is composed become merged and non-existent." I am conscious that legal definitions invite and provoke criticism, because the instances are rare in which they prove to be perfectly accurate; and yet this one offered to us may be accepted if it successfully bears some sufficient test. In putting it on trial we may take the nature of the individual liability of the corporators on the one hand and of the associates on the other, for the debts contracted by their respective organizations, as a sufficient test of the difference between them, and contrast their nature and character.

It is an essential and inherent characteristic of a corporation that it alone is primarily liable for its debts, because it alone contracts them, except as that natural and necessary consequence of its creation is modified in the act of its creation by some explicit command of the statute which either imposes an express liability upon the corporators in the nature of a penalty, or affirmatively retains and preserves what would have been the common-law liability of the members from the destruction involved in the corporate creation. In other words, the individual liability of the members, as it would have existed at common law, is lost by their creation into a corporation, and exists thereafter only by force of the statute, upon some new

and modifying conditions, to some partial or changed. extent, and so far preventing, by the intervention of an express command, the total destruction of individual liabilities which otherwise would flow from the inherent effect of the corporate creation. The penalties sometimes imposed are of course new statutory liabilities which never at common law rested upon the individual members. The retained liability occasionally established is in the nature and a parcel of such original liability, as we had occasion to show in *Rogers* v. *Decker* (131 N. Y. 490), but is retained by force of the express command of the statute and in that manner saved from the destruction which otherwise would follow the simple creation of the corporation. Ordinarily, these individual liabilities exist upon other than common-law conditions, and make the corporators rather sureties or guarantors of the corporation than original debtors, since in general their liability arises after the usual remedies against the corporation have been exhausted. But where that is not so, the invariable truth is that the creation of the corporation necessarily destroys the common-law liability of the individual members for its debts, and requires at the hands of the creating power an affirmative imposition of new personal liabilities or a specific retention of old ones from the destruction which would otherwise follow. Exactly the opposite is true of joint-stock companies. Their formation destroys no part or portion of their common-law liability for the debts contracted. Those debts are their debts for which they must answer. Permission to sue their president or treasurer is only a convenient mode of enforcing that liability, but in no manner creates or saves it. The statute of 1853 did interfere with it. That act required in the first instance a suit against the president or treasurer, and so a preliminary exhaustion of the joint property. But that act was modal, and determined the procedure. It suspended the common-law right, but recognized its existence. We so held in *Witherhead* v. *Allen* (4 Abb. Ct. App. Dec. 628), and at the same time said that the associations were not corporations but mere partnership concerns. Even that mode of procedure has been modi-

fied by the Code (§§ 1922, 1923), so that the creditor at his option may sue the associates without bringing his action against the president or treasurer. These last and quite recent enactments show that the legislative intent is still to preserve and not destroy the original difference between the two classes of organizations; to maintain in full force the common-law liability of associates and not to substitute for it that of corporators; and preserving in continued operation that normal and distinctive difference, to evince a plain purpose not to merge the two organizations in one or destroy the boundaries which separate them. That intent, once clearly ascertained, determines the construction to be adopted, and may be the only reliable test in view of the power of the state to clothe one organization with all the attributes of the other. The drift of legislation has been to lessen and obscure the original and characteristic difference. On the one hand corporations have been created with positive provisions retaining more or less the individual liability of the members, and on the other the joint-stock companies have been clothed with most of the corporate attributes, but enough of the original difference remains to shows that our legislation, not only carefully preserves the distinction of names, but sufficient, also, of the original difference of character and quality to disclose a clear intent not to merge the two.

We may thus see upon what the legislative intent to preserve them as separate and distinct is founded and what distinguishing characteristics remain. The formation of the one involves the merging and destruction of the common-law liability of the members for the debts, and requires the substitution of a new or retention of the old liability by an affirmative enactment which avoids the inherent effect of the corporate creation; in the other, the common-law liability remains unchanged and unimpaired and needing no statutory intervention to preserve or restore it; the debt of the corporation is its debt and not that of its members, the debt of the joint-stock company is the debt of the associates however enforced; the creation of the corporation merges and drowns the liability of its corporators,

the creation of the stock company leaves unharmed and unchanged the liability of the associates; the one derives its existence from the contract of individuals, the other from the sovereignty of the state. The two are alike but not the same. More or less, they crowd upon and overlap each other, but without losing their identity, and so, while we cannot say that the joint-stock company is a corporation, we can say as we did say in *Van Aernam* v. *Bleistein* (102 N. Y. 360), that a joint-stock company is a partnership with some of the powers of a corporation. Beyond that we do not think it is our duty to go.

The order should be affirmed, with costs.

All concur.

Order affirmed.